E-FILED
Thursday, 22 June, 2006  09:15:23 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## AT ROCK ISLAND

| | | |
|---|---|---|
| PEGGY J. WOLFE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 04-4052 |
| | ) | |
| JO ANNE B. BARNHART | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## ORDER

This matter is now before the Court on Plaintiff's Motion for Summary Reversal and the Commissioner's Motion to Affirm.  For the reasons set forth below, Plaintiff's Motion for Summary Reversal [#6] is DENIED, and the Defendant's Motion to Affirm [#9] is GRANTED.

## BACKGROUND

Plaintiff, Peggy J. Wolfe ("Wolfe"), was born on January 11, 1958, and was 46 years old at the time of her administrative hearing; she is five feet two inches tall and weighs approximately 300 pounds. (R61, R289, R295 )  Wolfe graduated from high school and completed one year of vocational training as a licensed practical nurse ("LPN").  (R289)  She has 27 years of employment history as a nurses aide and a LPN.  Id.  Wolfe last worked in August 2002 as an LPN at Forest Hill Health and Rehabilitation. (R116)

Wolfe filed an application for disability insurance benefits ("DIB") on September 6, 2002,

alleging a disability onset date of August 1, 2002, due to back pain and related problems from previous surgery, diabetes, asthma, chronic renal insufficiency, anaphylactic allergy reactions, and high blood pressure. (R61-3, R81) Her application was denied both initially on December 24, 2002, and on reconsideration on April 1, 2003. (R274-77, R279-82) Wolfe requested a hearing before an Administrative Law Judge ("ALJ"). (R52-60)  A hearing was held before ALJ John P. Johnson on February 5, 2004, at which Wolfe and vocational expert ("VE") Julie Svec appeared and gave testimony.  (R285-318)

Wolfe reports a lumbar laminectony in March 1995 and back injury in July 2002.  (R289) Following her the lumbar laminectony, she was  placed on a permanent 50 pound lifting restriction and was able to return by late May 1995.  (R136)   An x-ray in July 2002  revealed that Wolfe's injury resulted in degenerative changes in the lower lumbar region and disk space narrowing, but no evidence of acute abnormality.  (R185) Her treating physician, Dr. Oppenheimer, referred Wolfe to Dr. Cullen, a neurologist, in September 2002.  (R186–8)  Dr. Cullen noted that Wolfe had mild vibratory impairment at the ankles, ambulation favoring the left side, and low back pain with straight leg raising, but that she could heel to toe walk easily and step up.  Id.  He also noted her weight at 294 pounds.  Id.  A MRI in June 2003 noted postoperative changes but showed no evidence of radicular involvement in the legs or peripheral neuropathy to explain new symptoms.  (R258-9)

Wolfe testified that her diabetes and hypertension are fairly well controlled with medication, though steroid injections for her back pain result in elevated blood sugar levels.  (R290)  Wolfe testified that back pain prevents her from maintaining a regular exercise program and as a result she has added approximately 100 pounds to her normal 200 pound frame since  December 2002. (R290-1, R301)  Dr. Oppenheimer responded to a request by a state agency in December 2003 that Wolfe's

2

medical problems, with the exception of her obesity, are relatively well controlled with drug therapy. (R260) He opined that Wolfe's biggest limitations are orthopedic and related in part to her obesity and degenerative arthritis in the low back. (R260) Dr. Oppenheimer went on to assert that a sedentary job is reasonable in light of Wolfe's physical limitations.  Id.  Wolfe states that Dr. Oppenheimer and other consulting doctors advised her that weight loss might relieve her back pain and so she underwent gastric bypass surgery in February 2004 without incident.  (R300, R269-269A)

Wolfe testified that pain in her back and left leg restrict her ability to sit or stand for long periods of time.  She rates the pain in her back as consistently between 9.5 and 10 out of 10.  (R294-5) Wolfe is able either to stand for 10 to15 minutes or sit for 30 minutes before she experiences spasms in her lower back and pain that extends down from her left hip to lower left leg and foot. (R298)  She must then lay down or readjust her position to relieve the back spasm or pain.  (R292) Her condition has disrupted her sleep patterns to the extent that she gets little sleep, and occasionally no sleep, at night; as a result, she sleeps three to four hours during the day and two to three hours in the evening.  (R292-3)

Wolfe further testified that her injury has restricted her daily activities.  She states that she struggles to lift a four-pound bag of sugar, though doctors have only restricted her lifting to as much as 10 pounds.  (R293)  Her children must complete her grocery shopping as she is unable to push the cart and lift her left leg to sit in the car.  (294)  She must sit in a chair to shower and sometimes requires her children's assistance to get up from the couch or chair.  Id.  Though she  testified that the pain has negatively affected her ability to focus and concentrate, she maintains relationships with family and friends, helps her 15 and 16 year-old children with their homework, and plays games and

completes craft work, though for only short periods of time due to her sitting limitations. (R295, R306, R309-10)

The evaluation by the Disability Determining Services' (DDS) physician recognized limitations in Wolfe's daily functions. The DDS physician completed a Residual Functionality Capacity assessment in December 2003, which was later affirmed by a second DDS physician in March 2003, that opined that Wolfe could lift occasionally 10 pounds and frequently less than 10 pounds; stand or walk at least 2 hours in an 8-hour workday; and sit for a total of 6 hours in an 8-hour workday. The DSS physician also noted "no documented limitations" with respect to Wolfe's low back pain. (R207-15)

Wolfe's treating neurologist, Dr. Cullen, completed two medical evaluations in February 2003 and January 2004. (R262-4, R265-8) Both evaluations were completed at the request of the claimant's attorney and posed questions regarding the claimant's ability to walk, bend, stand, stoop, sit, climb, concentrate, and lift, among others. (R17-8, 262-8) Dr. Cullen opined in February 2003 that, among other things, Wolfe could lift up to 10 pounds and could speak, travel in a public conveyance, and perform fine manipulations to full capacity. (R264) Dr. Cullen's evaluation in January 2004 indicated that Wolfe needed to shift positions from sitting, standing and walking, though he was unable to indicate with what time or frequency. (R18, 277) He answered "uncertain" in response to a question regarding the length of time Wolfe was able to stand. Id. Dr. Cullen further indicated that the Wolfe's pain "frequently" interfered with her attention and concentration, though he was "uncertain" as to the impact on Wolfe's ability to tolerate work related stress. (R266)

The ALJ found the February 2003 and January 2004 medical opinions expressed by Dr. Cullen to be "significantly inconsistent" and rejected either opinion as "controlling." (R19) The

ALJ attached significant weight only to those portions of the medical opinion supported by objective evidence.  Id.  Furthermore, the ALJ determined that the RFC presented to the VE at the hearing was not inconsistent with either opinion expressed by Dr. Cullen.  Id.  The ALJ also determined that Wolfe's testimony regarding the intensity and severity of the symptoms were not fully credible in light of the objective medical evidence.  (R22, 24)

The ALJ presented the VE with two hypotheticals that referenced the claimant's age, sex, education, past relevant work, and impairments (R314).  The first hypothetical asked the VE to assume the RFC as follows:

> She should not stand or walk for more than two hours out of an eight-hour day.  She cannot sit for more than six hours out of an eight-hour day.  She can only occasionally bend, stoop, squat, kneel, crawl, or climb.  She should not work at unprotected heights and she should not be exposed to more than moderate levels of dust, fumes, or smoke. (R314)

The VE testified that the hypothetical individual could work as a practical nurse subject to the limitations that she lift no more than 10 pounds and stand or walk for only two out of eight hours per day. (R314)  Furthermore, the individual's acquired skills would transfer to sedentary jobs such as employment as a hospital admissions clerk, medical voucher clerk, and a blood bank clerk. (R315)  The VE reported that there are approximately 1,600 positions in Wolfe's area of Illinois and 80,000 positions nationwide in each of these areas of employment.  Id.

The ALJ posed a second hypothetical with the following RFC:

> She could not lift more than 10 pounds, no standing of more than 10 or 15 minutes at a time, no sitting of more than a half hour at a time, walking less than one block, with no bending, stooping, squatting, kneeling, or crawling.  Only occasional climbing.  This individual should avoid unprotected heights.  She could not be exposed to excessive heat, humidity, or cold, or more than minimal amounts of smoke.  And she should preform no work requiring constant close attention to detail. (R316)

The VE testified that an inability to maintain close attention to detail would preclude the transference of acquired skills and that the need to alternate sitting and standing positions would preclude unskilled employment. (R316-7)

The ALJ determined that there is no objective medical evidence to support the limitations posed in the second hypothetical, as Wolfe's physical examinations were within normal limits, with the exception of a reduced range of motion in the lumbar spine due to pain, and no treating or consulting physicians precluded all work activity. (R23) Accordingly, the ALJ adopted the VE opinion based on the first hypothetical and held that Wolfe's impairments precluded all past relevant work, but that she was able to perform a significant number of semi-skilled sedentary work that existed in the state and national economies. Id.

Wolfe's request for review by the Appeals Council was denied, and the ALJ's decision became the final decision of the commissioner. (R5). This appeal followed. The Court has jurisdiction over this action pursuant to 42 U.S.C 405 (g).

## DISCUSSION

In order to be entitled to DIB, a plaintiff must show that his or her inability to work is medical in nature and that he or she is totally disabled. Economic conditions, personal factors, financial considerations, and attitude of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. See 20 C.F.R. § § 404.1566, 416.966 (1986).

The establishment of disability under the Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382 (c)(a)(3)(A). Second, there

6

must be a factual determination that impairment renders the plaintiff unable to engage in any substantial gainful employment.  McNeil v. Califano, 614 F.2d 142, 143 (7th Cir. 1980).  That factual determination is made using a five-step test.  *See* 20 C.F.R. § § 404.1520, 416.920.

The five-step test is examined by the ALJ, in order, as follows: (1) is the plaintiff presently unemployed? (2) is the plaintiff's impairment "severe?" (20 C.F.R. § § 404.1521, 416.921); (3) does the impairment meet or exceed one of the list of specified impairments? (20 C.F.R § § Part 404, Subpart P, Appendix 1); (4) is the plaintiff unable to perform his or her former occupation? and (5) is the plaintiff unable to perform any other work in the national economy?

An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding the plaintiff is disabled.  A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled.  Garfield v. Schweiker, 732 F. 2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4.  However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment.  Tom v. Heckler, 779 F.2d 1250 (7th Cir. 1985); Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984).

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence.  Pugh v. Bowen, 870 F.2d 1271 (7th Cir 1989). The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied.  Delgado v. Bowen, 782 F. 2d 79, 82 (7th Cir. 1986).  In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind

7

might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct 1420 (1971). Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504 (1985); Imani v. Heckler, 797 F.2d 508 (7th Cir.), cert. denied, 479 U.S. 988, 107 S.Ct 580 (1986).

In her appeal, Wolfe raises three claims: (1) the ALJ failed to assign proper weight to the medical opinion of Wolfe's treating neurologist, Dr. Cullen; (2) the ALJ's decision is based on an incomplete hypothetical posed to the VE; and (3) the ALJ failed to properly take into account her obesity.

## I.  Discounting the Medical Opinion of a Treating Physician

Wolfe's first claim is that the ALJ failed to assign proper weight to the medical opinion of Wolfe's treating physician, Dr. Cullen.  She asserts that Dr. Cullen's two opinions are not inconsistent as the forms he completed request different information and were completed for different purposes.  Wolfe distinguishes the forms in part by arguing that Dr. Cullen completed the February 2003 evaluation for the Illinois Department of Human Services and the January 2004 evaluation at the request Wolfe's attorney.   Furthermore, Wolfe also asserts that both forms reflect the severe limitations of the claimant.

The Seventh Circuit has held that a treating physician is entitled to "controlling" weight in determinations of eligibility for disability insurance if his opinion is supported by substantial evidence and not inconsistent with other substantial evidence in the record. Dixon v. Massanari, 270 F.3d 1171, 1777 (7th Cir. 2001).  An  ALJ may discount a treating physician's opinion that is either inconsistent with the opinion of consulting physicians or internally inconsistent, so long as he "minimally articulates" his reasoning.  Skarbek v. Barnhart, 390 F.3d 500, 503 (7th Cir 2004)

(internal citations omitted).

Wolfe's proposition that the two forms have different purposes but both reflect severe limitations is not supported by an examination of the two forms. Both forms pose questions regarding Wolfe's abilities to walk, bend, stand, stoop, sit, climb, lift, and concentrate and the ALJ noted that Dr. Cullen completed both forms at the request of Wolfe's attorney. Nonetheless, the proposed distinction in purpose between a form completed for the Illinois Department of Human Services in February 2003 and a form completed in January 2004 at the petitioner's attorney is negligible; the larger purpose of the two forms is to ascertain the individual's limitations with respect to certain daily activities. Wolfe also asserts that both forms consistently indicate severe limitations, which implicitly recognizes that the forms have the same purpose and request similar information. Therefore, Wolfe's attempt to distinguish the design and purpose of the two forms is without merit.

Furthermore, the ALJ reasonably determined that the substance of the medical opinion expressed in the two forms is inconsistent. Wolfe argues that the ALJ's conclusion is based on a perceived inconsistency in an earlier assessment indicating that Wolfe has the full capacity to speak, travel in public conveyance, and perform fine manipulation with a later assessment that she cannot maintain concentration and must alternate positions. She maintains that these opinions are not inconsistent to "any significant degree." However, Wolfe's inability to maintain concentration and attention would directly impair her capacity to perform fine manipulation. Such activities require attention to detail and mental focus. Similarly, her need to alternate positions with indeterminate frequency has the potential to impact negatively her ability to travel in public conveyance. In fact, Wolfe recognized this causal relationship in reporting that she is unable to take public transportation

9

such as a bus or train because of "prolonged sitting for 1-2 hours." (R95)  Wolfe also maintains that the ALJ's reasoning fails to allow for subsequent deterioration;  however, Dr. Cullen fails to note subsequent deterioration or evidence to account for the discrepancy.  Therefore, the Court cannot find that the ALJ erred in concluding that the first and second assessments are inconsistent both internally and with other evidence in the record.  Accordingly, this Court finds that the ALJ reasonably discounted the medical opinions of Dr. Cullen.

## II. **The Limitations Posed in the First and Second Hypotheticals**

Wolfe's second claim is that the ALJ erred in relying on the first hypothetical, which did not include the more restrictive limitations of standing and sitting and maintaining concentration and attention.  She asserts that the totality of the evidence, including the medical opinion of Dr. Cullen and her own testimony, support these impairments.

The Seventh Circuit has held that the ALJ must include in a hypothetical question presented to the VE only those impairments that are supported by medical evidence.  Herron v. Shalala, 19 F. 3d 329, 337 (7th Cir) *citing* Cass v. Shalala 8 F. 3d 552, 556 (7th Cir. 1993).  The ALJ may discount subjective complaints of pain that are inconsistent with the evidence of as a whole.  Knight v. Charter, 55 F.3d 309, 314 (7th Cir. 1995).  The credibility determinations of the ALJ may not be overturned unless they are patently wrong.  Herr v. Sullivan, 912 F. 2d 178, 182 (7th Cir. 1990).

Here, the ALJ reasonably concluded that there is no objective medical evidence to support the restrictions in the second hypothetical.  As set forth previously, the medical opinion of Dr. Cullen is not sufficient evidence due to the internal inconsistences and lack of objective support for his conclusions.  Moreover,  Dr. Cullen's opinion does not quantify the time and frequency at which Wolfe needs to readjust positions, and his answers of "uncertain" and "unable to answer" in the

January evaluation do not support the second hypothetical's specific time restrictions on sitting and standing.  Nonetheless, the ALJ's sedentary restriction comports with Dr. Cullen's imposition of sedentary limitations of indeterminate time and frequency

Instead, the ALJ relied on the objective medical opinions of Dr. Oppenheimer and state agency physicians in adopting the first hypothetical.  The ALJ expressly relied on physical examinations that indicated normal limits with the exception of a reduced range of the lumbar spine due to pain, the failure of any treating or consulting physician to preclude all work-related activities, and Dr. Oppenheimer's medical opinion that Wolfe is capable of sedentary work.  The first hypothetical is consistent  with the opinion of the DDS physician,  specifically with respect  to sitting and standing limitations.  Furthermore, the ALJ reasonably determined that Wolfe's allegation of total disability is not fully credible in light of this objective medical evidence as a whole.  This Court finds that substantial evidence supports ALJ's reliance on the first hypothetical in determining that Wolfe is capable of limited sedentary work.

### III.  **Obesity as a Factor**

Wolfe's third claim that  the ALJ failed to consider  properly her obesity under Social Security Ruling (SSR) 02-01p is without merit.  The ruling requires an adjudicator to consider the effects of obesity in his evaluations.  SSR 02-01  The adjudicator must be cognizant that the "combined effects of obesity with other impairments may be greater than might be experienced without obesity."  Id.  The ALJ, as with any other impairment, must explain his determination of whether obesity caused any mental or physical impairment. Id.  The ALJ's is not required to analyze every piece of evidence; rather he must articulate some legitimate reason for his decision.  Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).  Moreover, the ALJ must draw a logical bridge from

the evidence to the conclusion.  Id.

Wolfe asserts that the ALJ failed both to consider the "combined effects" of her obesity with other impairments and to explain how he reached his conclusions.  However, contrary to Wolfe's protestations,  the ALJ adequately accounted for obesity in his conclusion.  The ALJ discussion properly recognized Wolfe's 100 pound weight gain to her normal 200 pound frame.  He noted the opinion of Michael Minter, an orthopaedist, that Wolfe was "extremely overweight"  but had normal balance.  The ALJ also referenced  Dr. Cullen's September 2002 opinion that Wolfe could walk easily heel to toe at a weight of 294 pounds.  Furthermore, the ALJ noted  Dr. Cullen's February 2003 diagnosis that Wolfe suffered low back pain, tenderness in the hip, and "pain on weight bearing" and experienced a twenty percent reduction in her ability to walk, stand, push, and pull.  Such limitations are reasonably related to Wolfe's weight bearing pain.  The ALJ consistently noted Wolfe's weight throughout his decision and implied a "logical bridge" between evidence and  the cumulative effect of obesity on daily functions.

Moreover,  the ALJ explicitly noted the opinion of  Dr. Oppenheimer that all of Wolfe's medical conditions, with the exception of obesity, were well controlled by drug therapy.  The ALJ therefore noted obesity as an impairment and implicitly recognized that drug therapy relieves any exacerbating effect of obesity.  Contrary to Wolfe's assertions of total disability, Dr. Oppenheimer opined that Wolfe is capable of sedentary work in light of her physical condition.  Despite the fact that Dr. Oppenheimer opined that the gastric bypass surgery in February 2004 might relieve all of her medical problems, the ALJ nonetheless included obesity as an impairment in both hypotheticals posed to the VE.  The ALJ's assessment reflects the medical evaluation of Dr. Oppenheimer, who diagnosed Wolfe with obesity; therefore, the ALJ's decision also considered Wolfe's obesity

indirectly.  See <u>Prochaska v. Barnhart</u>, No. 04-C-644-C, 2005 U.S. Dist. WL 901202, at *10 (D. Wis. 2005)  (arguing that the ALJ indirectly factored in the claimant's obesity by adopting the functional capacity assessment of the diagnosing physician).  As the record indicates that the ALJ gave adequate consideration to Wolfe's obesity, her argument to the contrary is without merit.

**CONCLUSION**

For the reasons set forth herein, the court finds that the ALJ's decision was supported by the substantial evidence.  Thus, Plaintiffs Motion for Summary Reversal [# 6] is DENIED, and the Commissioner's Motion to Affirm [# 9 ] is GRANTED.  This matter is now terminated.

ENTERED this 21st day of June, 2006.


<u>s/ Michael M. Mihm</u>
Michael M. Mihm
United States District Judge

13
